JOHN STEARNS *v.* LUTHER HAVEN, ISAAC HAVEN, and NATHAN GRISWOLD.

Persons are to be treated as partners if they so conduct and hold themselves out as such to others, whether their contract would make them so or not.

It is unnecessary, in such cases, to put a construction on their written contract, as between themselves and others, if by their conduct they have treated the contract as a contract of partnership.

ASSUMPSIT, on a promissory note, dated April 16, 1840. Plea, *non assumpsit*, and trial by jury.

On the trial in the county court the plaintiff read the note declared upon, which purported to be signed by L. Haven & Co. ; and to prove that the defendants composed the firm of L. Haven & Co. the plaintiff offered the testimony of R. Colberth, D. A. Smalley, and John W. Mason. Colberth testified, in substance, that in April or May, 1840, he had a conversation with all the defendants, and that they all said they were partners in the business of running the stage and carrying the mail from Burlington to Stanstead, and that Eli Stearns was their agent, but not a partner ; that witness knew that Eli Stearns acted as their agent, and that all the parners spoke of debts due from Stearns and Palmer (meaning Eli Stearns and A. W. Palmer) to various persons along the stage route, which L. Haven & Co. were bound to and should pay. He further testified that the stage was run on said route from sometime in March or April, by L. Haven & Co.

The testimony of Smalley tended to prove that, in the fall of 1837, or the spring of 1838, Stearns and Mason, being John Stearns and John W. Mason, who then owned the stage property on said route, sold it to Eli Stearns and A. W. Palmer ; that, to secure them, Eli Stearns and Palmer gave a bond, with Isaac Haven, Nathan Griswold, John Munson, and Simeon Covell, as sureties, conditioned that Eli Stearns and Palmer should run the stage and carry the mail during the term of John Stearns' and Mason's contract with the government to carry the mail, and the stage property was pledged for the same purpose; that Haven and Griswold were procured by Palmer and Munson, and Covell by Eli

Stearns, to sign as sureties; that Eli Stearns and Palmer run the stage until the 6th of May, 1839, when Eli Stearns sold out to Palmer, and, on that occasion, Palmer gave Eli Stearns his bond to perform the contract made with John Stearns and Mason, which was signed by Luther Haven and Griswold as his sureties; that Palmer run the stage until the close of the year 1839; that about that time Palmer failed, and John Stearns and Mason resumed the stage, and run it for a short time; that about the last of March or first of April, 1840, Luther Haven, Griswold, John Stearns, Mason, and Eli Stearns were in the office of Maeck & Smalley in Burlington, and it was then agreed that a new partnership should be formed consisting of Luther and Isaac Haven and Griswold, and that Eli Stearns should be constituted and act as their agent, and that the new firm should be L. Haven & Co.; that they should take the stage property from John Stearns and Mason, and run the stage during the continuance of the original contract of Eli Stearns & Palmer, and that they should settle and pay up the debts which Eli Stearns and Palmer had contracted and were owing to various individuals along the route; that, afterwards, on the same or next day, the same persons came again into the office with a paper, of which the following is a copy:

' Burlington, March 28, 1840. We, the undersigned, hav-
' ing taken charge of the stage property from Burlington on
' the route to Derby Line, by way of Craftsbury, for the pur-
' pose of transporting the mail on said route during the pres-
' ent contract with the government, have appointed Eli
' Stearns as our agent and superintendant on said route, for
' which he, the said Stearns, is to receive a reasonable com-
' pensation in stock on the road at the expiration of the con-
' tract, to manage the business for transporting the said mail
' on said route, and all other branches of business attached
' to or connected with said line. And we, therefore, bind
' ourselves jointly to indemnify all persons who may assist
' Mr. Stearns in the performance of his duties as stage agent,
' and we also bind ourselves to see the bills, already accrued
' on said road, under the purchase of Stearns & Palmer, not
' including bills after May 6, 1839, after the same shall have
' been fully and fairly adjusted, paid, we having received an

'assignment of the stage property on said road from A. W.
'Palmer, for the purpose of indemnifying us for the same.

'Luther Haven,        Simeon Covell,
'Nathan Griswold,      Eli Stearns,
'Isaac Haven          John Munson.'

Which was signed by Luther and Isaac Haven and Griswold ; that they inquired of the witness if that paper would constitute Eli Stearns a partner, provided he signed it, saying if it would he, Eli, was not to sign it, and if not he would sign it; that witness answered it would not; that, therefore, as he supposed, Eli Stearns put his name to it, but that neither Munson nor Covell were there, and the witness did not understand that they were any part of said company, and did not put their names to the paper until September, 1840, or afterwards ; that Isaac Haven was not at the office, but that in January, 1841, witness saw Isaac Haven, and he admitted that he had given Luther Haven liberty to put his name to the paper.   His testimony tended also to prove that immediately after this L. Haven & Co. run the stage ; that in business connected therewith, and also for the aforesaid old debts of Eli Stearns and Palmer, they executed notes in the name of L. Haven & Co., and that so far as he knew during the following summer, L. Haven always represented that the aforesaid firm was composed of the defendants only, and that Eli Stearns was merely an agent.

The testimony of Mason was in substance the same as Smalley's.

The defendants contended, and so requested the court to charge the jury, that the paper of the 28th of March, 1840, did not constitute a partnership, and did not authorize any of the signers to purchase property on their joint credit, nor to give a note in the name of L. Haven & Co.; that if any partnership was created thereby, it embraced Eli Stearns, at least.

The plaintiffs insisted that the paper did constitute a partnership between the defendants *alone*, at the time this note was given ; and that, if the partners assumed the name of L. Haven & Co., either had a right to give the note of the firm for a company transaction ; and that, whether the paper constituted a partnership or not, if the defendants held themselves out to the world as partners, and did business as such,

under the name of L. Haven & Co., they were liable on the note.

The court charged the jury, that if they found that the defendants had entered into the agreement of the 28th March, 1840, and signed the paper of that date, and that Munson and Covell did not become parties to it until September afterwards, and further found that the defendants, previously to the execution of the note in suit, held themselves out to the world as partners, and did business as such, under the name of L. Haven & Co., the plaintiff was entitled to recover. But if they did not find those facts, the defendants were entitled to a verdict.

The jury returned a verdict for the plaintiff, and the defendants excepted.

*C. Adams,* for defendants.

There was properly no question of fact in the case except as connected with the execution of the paper of March 28, 1840.

The testimony of Colberth related to a time subsequent to the execution of the note, and of course had no bearing on that.

The testimony of Smalley and Mason is confined wholly to the conversation about framing the agreement, but as it resulted in the execution of the paper, the effect of the agreement is to be ascertained wholly from the paper.

The plaintiff in this suit could not be misled by any thing said by defendants, as to the partnership, as he was present when the bargain was made, and also when it was reduced to writing.

The effective words of the contract are, that the subscribers appoint Eli Stearns as their agent to drive the stage ; that they bind themselves to indemnify all who may assist Stearns ; that they agree among themselves to pay all the bills of Stearns and Palmer, which accrued on the road before May 6, 1839.

This agreement to pay the bills can confer no right of action in favor of any of the creditors. Luther Haven and Griswold were bound to indemnify Eli Stearns against those bills, but the creditors could make no claim upon them.

Whether Issac Haven would be bound by this agreement, to contribute with Luther Haven and Griswold is not material.

What the defendants may have said in relation to the contract, or what they may have considered as to the effect of it, cannot change the construction which it is to receive.

The paper of the 28th of March, is at most but a joint undertaking to run out the stage contract and the appointment of an agent for that purpose. It has none of the characteristics of a partnership agreement. There is no common interest in the property put upon the road, but whatever either has put on will remain his own individually. There is and could be no *jus accrescendi*, but, on the death of any one, the stock thus placed on the road will go to his administrator.

There is no agreement expressed or implied for any division of the profits or losses. It may be true that if any one pays more than his share of the loss he may compel a contribution ; but a liability to contribution is no evidence of a partnership.

It has long been held, in this state, that a division of the gross earnings does not create a partnership. *Boardman v. Keeler,* 2 Vt. R. 65. *Ambler v. Bradley,* 6 Vt. R. 119. *Bowman v. Bailey,* 10. Vt. 170. *Kellogg v. Griswold,* 12 Vt. R. 291.

A joint purchase is not a partnership. So a joint possession may render persons tenants in common, but it does not of itself make them partners. *Hour v. Dawes,* Douglass, 371. *Cooper v. Eyre.* 1 H. Bl. 37. 16 East, 173. *Waugh v. Carver,* 2 H. Bl. 235. *Graves v. Smith,* 2 Blacks. 998. *Rice v. Austin,* 17 Mass. 197. *Loomis v. Marshall,* 12 Conn. 70. 1 Johns. 106.

*D. A. Smalley & S. Wires,* for plaintiff.

I. What was the intention of the parties to the contract of the 28th of March, 1840 ? We insist that it was to create a partnership between Luther and Isaac Haven and Griswold and make Stearns their agent.

1. It shows a *joint* consideration, a joint undertaking to do certain business, a *joint* and not a *several* liability, and a joint interest in profit and loss. It possesses all the requisites of a partnership. Collyer on Part. 2, 8.

2. Eli Stearns was not a partner, but a mere agent, and was to be paid a 'reasonable compensation in stock on the road, at the *expiration of the contract.*' He signed merely to show, as between themselves, that he was to be the *agent,* and take his pay in stock. He was to be paid, at all events; but not to share in profit and loss. Coll. on Part. 14, 15, 17.

3. It clearly appears from the testimony which was unobjected to, that Stearns was not to be a partner, but merely an agent, and that he signed the paper with that express understanding. If, therefore, the paper alone would make him a partner, as between themselves, it was contrary to the agreement, and therefore not binding on him as between the parties to the writing, and if not, the public are not bound to treat him as a partner. Coll. on Part. 55.

4. These defendants agreed to, and did assume the name of L. Haven & Co.; and a note given by one of the firm binds the whole. Coll. on Part. 212, and on.

II. The case shows that the county court charged the jury that they *must* further find that the defendants held themselves out to the world *as partners,* and did business as such under the name of L. Haven & Co. This was done at plaintiff's request. Whatever construction, therefore, may be given to the paper, these defendants were clearly liable as nominal partners, by the finding of the jury. Coll. on Part. 3, 49, 51, 55, 213, in note.

2. The evidence shows that it was agreed that these defendants alone should compose the firm of L. Haven & Co., and that Eli Stearns was a mere agent; that these defendants represented themselves to be partners and did business as such. Therefore, if the court should think that the paper, taken alone, did make Eli Stearns a partner as between themselves, a knowledge of the paper cannot affect the plaintiff's rights, when it was contrary to the agreement of the parties, and signed by Eli Stearns with the express understanding of all that it did not and should not constitute him a partner, and all this known to the plaintiff. Coll. on Part. 212, 213.

The opinion of the court was delivered by

WILLIAMS Ch. J.—On examination of the case we are of

LAMOILLE,
April,
1842.

Stearns
v.
Haven et al.

the opinion that the question does not here arise, whether the written contract, bearing date March 28, 1840, made these defendants partners or not. Whether persons are partners *inter se*, may depend on their contract between themselves. Whether they are partners as to others is to be learned from their conduct. In a suit in favor of a person who credits others as partners, it is rarely necessary to give them notice to produce their articles of partnership; but the proof is drawn from other sources. It is, also, not material, except on a plea in abatement, whether others are partners or jointly concerned with the persons sued. It was, therefore, of no consequence on the trial to inquire whether Eli Stearns was a partner with the defendants, or only an agent.

The paper, executed on the 28th of March, may, or may not express their intentions, and if it does not, may embarrass them in controversies between themselves. If they considered it as a contract of partnership, and so declared to the witnesses, and conducted as such, the present plaintiff might deal with them as partners, and his knowledge of the contract, or its terms, would not alter his rights nor vary their responsibility.

The testimony, as detailed in the bill of exceptions, is very clear and decisive, that all the defendants avowed the intention of becoming partners, and after executing the writing declared that they had become partners. However desirous, therefore, the defendants may have been to obtain the opinion of the court on the trial, as to the legal effect of that contract, and whether it did constitute a partnership, and to what extent, the plaintiff very prudently avoided placing his case on that ground alone. The charge of the court put the effect of the writing out of view, except as to its execution and left it to the jury to say whether the defendants had conducted and held themselves out as partners, and is wholly unexceptionable. The verdict of the jury has settled the fact that they considered themselves and conducted and acted as such. No question was made either at the county court or here, but that the note was given for a consideration within the scope and design of the partnership, if any existed.

The judgment of the county court is affirmed